# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

**Civil Action No.** _____

HIGH PLAINS HARVEST CHURCH; and
MARK HOTALING,

      Plaintiffs,

v.

JARED POLIS, in his official capacity as Governor of the State of Colorado; and
JILL HUNSAKER RYAN, in her official capacity as Executive Director of the Colorado Department of Public Health and Environment,

      Defendants.

---

## VERIFIED COMPLAINT
---

Plaintiffs submit the following Verified Complaint:

## I. INTRODUCTION

1. Today in Colorado it is perfectly legal for hundreds of shoppers to pack themselves cheek by jowl into a Lowes. But if 50 people meet to worship God in a small rural church, they do so at the risk of being fined and imprisoned. Plaintiffs feel as though they have stepped through the looking glass into a world where the right to shop for gardening supplies and home improvement materials is protected by the Constitution, while meeting as a body to worship God corporately has been relegated to the category of unnecessary of even superfluous. Plaintiffs call upon the Court to come to their aid, vindicate their religious liberties under the First Amendment to the United States Constitution, and remedy the surreal state of affairs in which they inexplicably find themselves.

## II. PARTIES

2. High Plains Harvest Church ("HPHC" or the "Church") is a small church located at 108 1st Street, Ault, Colorado 80610. HPHC is a religious nonprofit organization. HPHC brings this action on its member's behalf. HPHC has associational standing because (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to its purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. Each of HPHC's members would have standing to assert claims for breach of their constitutional rights as set forth herein. The interest HPHC seeks to protect, especially the interest in the free exercise of religion, is germane to HPHC's purpose. The claims asserted herein do not require the participation of individual members. HPHC seeks a declaration, injunction, and other prospective relief, and it can reasonably be supposed that the remedies, if granted, will inure to the benefit of those members of HPHC actually injured.

3. Plaintiff Mark Hotaling ("Hotaling") is a resident of Colorado.

4. Defendant Jared Polis ("Governor Polis") is the Governor of Colorado. Governor Polis is sued in his official capacity only. All of Governor Polis's actions described herein were taken under color of law.

5. Defendant Jill Hunsaker Ryan ("Director Ryan") is the Executive Director of the Colorado Department of Public Health and Environment. Director Ryan is sued in her official capacity only. All of Director Ryan's actions described herein were taken under color of law.

## III. JURISDICTION AND VENUE

6. This action arises under the Constitution and laws of the United States, and is brought pursuant to Title 42 U.S.C. § 1983.

7. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

8. The Court may declare the legal rights and obligations of the parties in this action pursuant to 28 U.S.C. § 2201 because the action presents an actual controversy within the Court's jurisdiction.

9. Jurisdiction supporting Plaintiffs' claim for attorney's fees and costs is conferred by 42 U.S.C. § 1988.

10. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the State of Colorado (the "State"), and all of the parties were residents of the State at the time of the events giving rise to this litigation.

## IV. FACTUAL BACKGROUND

11. HPHC's vision is to be a Christ-centered, rural, regional church that makes a genuine difference in the hearts of people throughout northern Colorado. The Church seeks to create an environment where each person is: cultivating daily, life-changing intimacy with the Savior; experiencing biblical community with others in the body of Christ; using their time, talents, and treasures to further God's kingdom; engaging in intentional discipleship and ministry; and bringing the Gospel into their sphere of influence with word and action.

12. Hotaling is a former Navy SEAL and a service-disabled veteran. After returning home from the Navy, Hotaling followed the Lord's call to serve Him full-time. Hotaling is a devout Christian and a pastor in the Church. Until the recent COVID-19 outbreak, Hotaling frequently attended and/or led services at the Church. He typically attended and/or led three to

four services and/or other religious gatherings per week. Hotaling has a sincerely held religious belief that in-person attendance at church is central to his faith.

13. In response to the presence of COVID-19 in Colorado, on April 26, 2020, Governor Polis issued his so-called "Safer at Home" order, Executive Order, D 2020 044 (the "Executive Order"). A copy of the Executive Order is attached as Exhibit A.

14. In the Executive Order Governor Polis directed Director Ryan to issue a public health order "[prohibiting] public gatherings of ten (10) persons or more in both public spaces and private commercial venues." Executive Order II.H.3.

15. On May 14, 2020 Director Ryan issued Third Amended Public Health Order 20-28 Safer at Home (the "PHO"). The PHO "sets forth the requirements for implementation of [the Executive Order], as directed by Governor Polis." A copy of the PHO is attached as Exhibit B.

16. The PHO prohibits all public and private gatherings greater than ten individuals except for "Necessary Activities." PHO I. C. There is no numerical limit on the number of persons who may be present when "Necessary Activities" are conducted. Religious worship services are not considered Necessary Activities under the PHO.

17. "Necessary Activities" do include activities associated with "Critical Businesses." PHO III. A. 4. "Critical Businesses" are listed in Appendix F to the PHO and include numerous business activities, including grocery stores; produce stands; gas stations; convenience stores; marijuana dispensaries; liquor stores; gun stores; funeral homes, airlines, mining operations such as oil and gas extraction, hardware stores; laundromats; banks; law offices; and accounting offices.

4

18. The PHO states that it "will be enforced by all appropriate legal means," and that "[f]ailure to comply with this order could result in penalties, including jail time, and fines . . ." PHO, VI. A previous version of the PHO invoked the authority of C.R.S. § 25-1-114 to impose criminal penalties.

19. Director Ryan has also issued "Guidance for Places of Worship" to implement the Executive Order (the "Guidance"). A copy of the Guidance is attached as Exhibit C. The Guidance states that religious gatherings are permitted only as long as the gatherings are with 10 people or fewer. Guidance, p. 1.

20. The Executive Order, the PHO and the Guidance shall be referred to herein collectively as the "Orders."

21. On May 25, 2020, Hotaling went to a local Lowes. He observed literally hundreds of customers going in and out of the store. The parking lot was packed to near capacity, and drivers were circling in hopes of finding a parking spot. See Exhibit D.

22. The Orders have the effect of prohibiting a gathering of 50 worshipers in HPHC's sanctuary – even if all of those worshipers observe social distancing requirements – while at the very same time allowing hundreds of people in the Lowes down the road.

23. The Bible commands Christians not to forsake the gathering together of believers. Hebrews 10:24-25. In-person corporate worship is a fundamental tenet of Christian practice and has been for nearly 2,000 years.

24. HPHC and its members, including Hotaling, have a sincerely held religious belief that the physical corporate gathering of believers is a central element of religious worship commanded by the Lord.

25. It is a substantial burden on the religious exercise of HPHC and its members, including Hotaling, if they cannot meet for in-person corporate worship as a body of believers.

26. HPHC in furtherance of the sincerely held religious beliefs of its members, desires to recommence in-person worship services.

27. In all services, HPHC and Hotaling will following CDC guidelines for faith communities. *See Centers for Disease Control and Prevention Interim Guidance for Communities of Faith*, https://www.cdc.gov/coronavirus/2019-ncov/php/faith-based.html?mod=article_inline. These guidelines include:

- Encouraging staff and congregants to maintain good hand hygiene
- Encouraging use of cloth face coverings among staff and congregants
- Cleaning and disinfecting frequently touched surfaces at least daily and shared objects in between uses
- Promoting social distancing at services and other gatherings, ensuring that clergy, staff, choir, volunteers and attendees at the services follow social distancing throughout services

28. Hotaling and HPHC also intend to follow the social distancing standards set forth in Director Ryan's Guidance.

29. Hotaling expects approximately 50 people to attend the in-person services.

30. To the best of Hotaling's knowledge, no member of HPHC has COVID-19.

31. The Church and Hotaling reasonably fear prosecution, including fines, arrest, and jail, if they proceed with this plan to meet for in-person corporate worship in a group of more than ten worshipers.

32. Governor Polis and Director Ryan have actively enforced the Orders and declared their intention to continue to do so.

33. On April 14, 2020, United States Attorney General William Barr issued a statement declaring the Department of Justice opposes discrimination against religious activity in the context of their COVID-19 responses. In pertinent part, the statement said:

> even in times of emergency, when reasonable and temporary restrictions are placed on rights, the First Amendment and federal statutory law prohibit discrimination against religious institutions and religious believers. **Thus, government may not impose special restrictions on religious activity that do not also apply to similar nonreligious activity. For example, if a government allows movie theaters, restaurants, concert halls, and other comparable places of assembly to remain open and unrestricted, it may not order houses of worship to close, limit their congregation size, or otherwise impede religious gatherings.** Religious institutions must not be singled out for special burdens. . . . where a state has not acted evenhandedly, it must have a compelling reason to impose restrictions on places of worship and must ensure that those restrictions are narrowly tailored to advance its compelling interest.

April 14, 2020 Statement of United States Attorney General William Barr, https://www.justice.gov/opa/pr/attorney-general-william-p-barr-issues-statement-religious-practice-and-social-distancing-0 (last accessed May 24, 2020) (emphasis added).

## V. FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Violation of First Amendment Freedom of Religion

34. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

35. The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits the State from abridging Plaintiffs' rights to free exercise of religion.

36. Plaintiffs have sincerely held religious beliefs that the Bible is the infallible, inerrant word of the Lord Jesus Christ and they are to follow its teachings.

37. Plaintiffs have sincerely held religious beliefs, rooted in Scripture's commands (e.g., Hebrews 10:25), that followers of Jesus Christ are not to forsake the assembling of themselves together, and that they are to do so even more in times of peril and crisis. Indeed, the entire purpose of the Church (in Greek "*ekklesia*," meaning "assembly") is to assemble together Christians to worship Almighty God.

38. The Orders, on their face and as applied, impermissibly burden Plaintiffs' sincerely held religious beliefs, compel Plaintiffs to either change those beliefs or to act in contradiction to them, and force Plaintiffs to choose between the teachings and requirements of their sincerely held religious beliefs in the commands of scripture and the State's regulations.

39. The Orders, on their face and as applied, are neither neutral nor generally applicable, but rather discriminate against the religious beliefs, speech, assembly, and viewpoint of Plaintiffs.

40. The State lacks a compelling, legitimate, or rational interest in the Orders' application of different standards for churches and faith-based gatherings than those applicable to exempted businesses and other non-religious entities.

41. Even if the Orders' restriction on faith-based gatherings were supported by a compelling interest, they are not the least restrictive means to accomplish the government's purported interest.

42. The Orders, on their face and as applied, fail to accommodate Plaintiffs' sincerely held religious beliefs.

43. The Orders, on their face and as applied, burden Plaintiffs' sincerely held religious beliefs while at the same time setting up a pervasive system of individualized exemptions that permit other similarly situated businesses or non-religious entities to continue

operations while prohibiting faith-based gatherings, such as Plaintiffs' church and religious gatherings, from operating.

44. The Orders, on their face and as applied, have caused, are causing, and will continue to cause Plaintiffs immediate and irreparable harm, and actual and undue hardship.

45. Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their liberties.

46. Plaintiffs respectfully pray for the relief against the State as hereinafter set forth in their prayer for relief.

## VI.  SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Violation of Right to Equal Protection Under the Fourteenth Amendment

47. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

48. The Fourteenth Amendment to the United States Constitution guarantees Plaintiffs the right to equal protection under the law.

49. The Orders, on their face and as applied, are an unconstitutional abridgment of Plaintiffs' right to equal protection because in the Orders the State treats Plaintiffs differently from other similarly situated businesses and non-religious entities on the basis of the exercise of their fundamental rights.

50. The Orders, on their face and as applied, impermissibly discriminate between certain non-religious gatherings and religious or faith-based gatherings.

51. The State lacks a compelling, legitimate, or rational interest in the Orders' application of different standards for churches and faith-based gatherings than those applicable to exempted businesses or non-religious entities.

52. The Orders, on their face and as applied, are not the least restrictive means to accomplish any permissible government purpose sought to be served.

53. The Orders, on their face and as applied, do not have a rational basis.

54. The Orders, on their face and as applied, are irrational and unjustifiable and impose irrational and unjustifiable restrictions on Plaintiffs' religious or faith- based gatherings.

55. The Orders, on their face and as applied, have caused, are causing, and will continue to cause Plaintiffs immediate and irreparable harm, and actual and undue hardship.

56. Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished liberties.

57. Plaintiffs respectfully pray for the relief against the State as hereinafter set forth in their prayer for relief.

## VII.  THIRD CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Violation of First Amendment Free Speech Rights

58. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

59. The Orders violate Plaintiffs' freedom of speech by prohibiting them from engaging in religious speech through their church services which occur exclusively on private property.

60. The Orders give government officials unbridled discretion with respect to enforcement of the Orders and the imposition of any penalty, making the Orders susceptible to both content- and viewpoint-based discrimination.

61. Prohibiting or punishing Plaintiffs' religious speech does not serve any legitimate, rational, substantial, or compelling governmental interest.

62. The State has alternative, less restrictive means to achieve any interest that it might have.

63. The Orders violate the Free Speech Clause of the First Amendment to the United States Constitution, both facially and as applied.

64. In the absence of declaratory and injunctive relief, Plaintiffs will be irreparably harmed.

65. Plaintiffs respectfully pray for the relief against the State as hereinafter set forth in their prayer for relief.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A. That the Court issue a Temporary Restraining Order restraining and enjoining Governor Polis, Director Ryan and all persons in active concert or participation with them, from enforcing, attempting to enforce, threatening to enforce, or otherwise requiring compliance with the Orders or any other order to the extent any such order prohibits in-person services at the Church if the Church meets the social distancing and hygiene guidelines pursuant to which the State allows so-called "Necessary Activities" to be conducted without numerical limit.

B. That the Court issue a Preliminary Injunction pending trial, and a Permanent Injunction upon judgment, restraining and enjoining Governor Polis, Director Ryan and all persons in active concert or participation with them, from enforcing, attempting to enforce, threatening to enforce, or otherwise requiring compliance with the Orders or any other order to the extent any such order prohibits in-person services at the Church if the Church meets the

social distancing and hygiene guidelines pursuant to which the State allows so-called "Necessary Activities" to be conducted without numerical limit.

  C. That the Court render a Declaratory Judgment declaring that the Orders both on their face and as applied by the State are unconstitutional under the United States Constitution and further declaring that the State has violated Plaintiffs' rights to free exercise of religion, right to equal protection of the laws, and right to free speech.

  D. That the Court declare Plaintiffs are prevailing parties and award Plaintiffs the reasonable costs and expenses of this action, including a reasonable attorney's fee, in accordance with 42 U.S.C. § 1988.

  E. That the Court grant such other and further relief as the Court deems equitable and just under the circumstances.

Respectfully submitted this 25th day of May 2020.

/s/ Barry K. Arrington

_____
Barry K. Arrington
Arrington Law Firm
3801 East Florida Avenue
Suite 830
Denver, Colorado 80210
Voice: (303) 205-7870
Fax: (303) 463-0410
Email: barry@arringtonpc.com
Attorney for Plaintiffs

**VERIFICATION**

  I, Mark Hotaling, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that I have reviewed the foregoing Complaint, that I am competent to testify in this matter, that the facts contained therein are true and correct, and such allegations are based on information personally known and observed by me.
Executed on May 25, 2020.

_____
Mark Hotaling