# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.-RM-MEH

HIGH PLAINS HARVEST CHURCH; and
MARK HOTALING,

    Plaintiffs,

v.

JARED POLIS, in his official capacity as Governor of the State of Colorado; and
JILL HUNSAKER RYAN, in her official capacity as Executive Director of the Colorado
Department of Public Health and Environment,

    Defendants.

---

# REPLY IN SUPPORT OF

# PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

# AND

# MOTION FOR PRELIMINARY INJUNCTION

---

Plaintiffs submit the following Reply in Support of their Motion for Temporary Restraining Order and Motion for Preliminary Injunction.

### A.    Jacobson is Not a License to Suspend the Constitution

The State relies on Jacobson v. Commonwealth of Massachusetts, 197 U.S. 11 (1905), but that case does not stand for the proposition that the government can suspend the Constitution in times of emergency. In fact, the case states exactly the opposite. *Jacobson* was a challenge to a compulsory vaccination law, and the Court held the law was within the state's

police power. The Court specifically stated, however, that if a law – even a law enacted to protect the public health or safety – invades "rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution." *Id*., at 31. Far from being a license to suspend the Constitution in times of emergency, *Jacobson* specifically stated that health regulations that violated the constitution must be set aside.

In *Jacobson* the Court noted that the Massachusetts health regulation applied equally to all adults. *Id*. at 30. Surely the Court would have struck down a health regulation that compelled church attenders to obtain vaccinations while exempting other, similarly situated, people. But that is what has happened here. As set forth in detail in the opening brief, the Colorado health regulations discriminate against faith communities and therefore violate the Free Exercise clause of the First Amendment.

In his well-reasoned dissent in *S. Bay United Pentecostal Church v. Newsom*, 2020 WL 2687079 (9th Cir. May 22, 2020), Judge Collins addressed the applicably of *Jacobson* to California's COVID-19 orders and rejected the argument that *Jacobson* applied:

> As the State sees it, there is no 'reason why *Jacobson* would not extend to *the First Amendment and other constitutional provisions*' (emphasis added). I am unable to agree with this argument, **which seems to me to be fundamentally inconsistent with our constitutional order**. *Cf. Sterling v. Constantin*, 287 U.S. 378, 397–98, 53 S.Ct. 190, 77 L.Ed. 375 (1932) ('If this extreme position could be deemed to be well taken, it is manifest that the fiat of a state Governor, and not the Constitution of the United States, would be the supreme law of the land; that the restrictions of the Federal Constitution upon the exercise of state power would be but impotent phrases[.]'). The State's motion cites no authority that can justify its extraordinary claim that the current emergency gives the Governor the power to restrict any and all constitutional rights, as long as he has acted in 'good faith' and has 'some factual basis' for his edicts. **Nothing in *Jacobson* supports the view that an emergency displaces normal constitutional standards**. Rather, *Jacobson* provides that an emergency may justify temporary constraints **within those standards**.

2

*Id*. at *3, Collins, J. dissenting (emphasis added).

B.     **Plaintiffs Do Not Dispute That COVID-19 is a Serious Problem or That the State Has Authority to Implement Generally Applicable Regulations in Response to the Virus**

The State asserts that COVID-19 is a public health emergency. Resp. 3-4; 13-16. The State asserts that COVID-19 is spread in large gatherings and social distancing can mitigate its spread. Resp. 5-7; 14. The State asserts it may enact health regulations to mitigate the spread of COVID-19. Resp. 13 Plaintiffs do not dispute any of these assertions.

Nevertheless, even in the pursuit of legitimate interests government cannot regulate in a selective manner that imposes burdens on conduct motivated by religious belief. *Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 543 (1993). This principle "is **essential to the protection** of the rights guaranteed by the Free Exercise Clause." *Id*. (emphasis added). The Orders violate this principle. That is the point of this case.

Thus, all of the State's arguments about how serious COVID-19 is and how it has enacted regulations to control its spread are completely beside the point and irrelevant to Plaintiffs' constitutional challenge. No one disputes that the State may enact generally applicable regulations to combat the virus. Plaintiffs vigorously dispute that the State may enact regulations that allow hundreds of people to cram cheek by jowl into a Lowes while limiting to ten the number of people who may worship God together.

C.     *Lawrence v. Colorado* **Supports <u>Plaintiffs'</u> Case, Not the State's**

The State asserts that Judge Dominico's order in *Lawrence v. Colorado*, 2020 WL 2737811 (D. Colo. Apr. 19, 2020) is applicable to this case. That is true, but not in the say the State intends.

In *Lawrence* Judge Dominico held that the Plaintiff's inability to attend Mass was the result of a private decision of the Catholic bishops. *Id*. at 6-7. Therefore, he could not trace his injury to an action of the State and had no Article III standing. *Id*. Therefore, Judge Dominico held "the Court does not have jurisdiction to address Mr. Lawrence's free exercise claim."

Judge Dominico appended the following caveat to this statement:

> Where the government has actually prohibited activity that a church wishes to undertake, **the church, at least, will have standing to challenge that action**. *See, e.g., On Fire Christian Ctr.*, 2020 WL 1820249; *Legacy Church, Inc. v. Kunkel*, No. 1:20-cv-00327-JB-SCY (D.N.M. Apr. 17, 2020), ECF No. 29; *First Baptist Church v. Kelly,* No. 6:20-cv-01102-JWB-GEB (D. Kan. Apr. 18, 2020), ECF No. 15.

*Id.* (emphasis added).

Judge Dominico did not reach Mr. Lawrence's Free Exercise claim. But far from undermining Plaintiffs' Free Exercise claim, Judge Dominico cited the very cases Plaintiffs have cited as authority for the proposition that they are entitled to assert that claim.

**D.    The Orders are Not Generally Applicable**

The State argues the Order are generally applicable. The *Roberts* Court rejected a similar argument:

> . . . many of the serial exemptions for secular activities pose comparable public health risks to worship services. For example: The exception for 'life-sustaining' businesses allows law firms, laundromats, liquor stores, gun shops, airlines, mining operations, funeral homes, and landscaping businesses to continue to operate so long as they follow social-distancing and other health-related precautions. R. 1-7 at 2–6. But the orders do not permit soul-sustaining group

4

services of faith organizations, even if the groups adhere to all the public health guidelines required of the other services.

*Roberts*, 958 F.3d at 414.

**E.     The Orders Are Not Neutral**

The State argues the Orders are neutral because they do not prohibit more than ten people from attending church services by reference to those services "religious nature." Resp. 20.  The State's argument that facial neutrality is dispositive runs squarely into the holding in *Hialeah*.  "Facial neutrality is not determinative."  *Hialeah*, at 534.  State action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality."  *Id*.

**F.     Houses of Worship Are Effectively Closed**

The State argues that "houses of worship in Colorado were never closed."  That is technically true but substantively false.  Limiting a church with a capacity of 2,000 (or even 150) to ten people is effectively a closure in all but name.  It is unclear what the State hopes to gain from this wordplay.

**G.     Alternate Modes of Worship are No Substitute for Corporate Worship**

The State argues that churches have no reason to complain, because they can go online, broadcast their services or host drive-in services.  Resp., 10-11.  In *Roberts v. Neace*, 958 F.3d 409 (6th Cir. 2020), the Sixth Circuit rejected an identical argument:

> Sure, the Church might use Zoom services or the like, as so many places of worship have decided to do over the last two months.  But who is to say that every member of the congregation has access to the necessary technology to make that work?  Or to say that every member of the congregation must see it as an adequate substitute for what it means when 'two or three gather in my Name,' Matthew 18:20, or what it means when 'not forsaking the assembling of ourselves

5

together,' Hebrews 10:25; *see also On Fire Christian Ctr., Inc. v. Fischer*, No. 3:20-CV-264-JRW, __F.Supp.3d __, 2020 WL 1820249, at *7–8 (W.D. Ky. Apr. 11, 2020).

*Id.*, at 415.

## H. The Discrimination Got Worse After Plaintiffs Filed their Complaint

The State notes refers the Court to Director Ryan's Fourth Amended Public Health Order (Resp., Ex. 7). Under that order '[e]ffective May 27, 2020, Restaurants may open to in-person dining at 50% of the indoor posted occupancy code limit, not to exceed 50 people, whichever is less." Now in Colorado people can gather for physical food in groups of 50. But if they want to gather to receive spiritual food, they are still limited to groups of ten.

## I. COVID-19 is Not a Respecter of Places

The State asserts that COVID-19 has been spread in houses of worship. Resp. 14. But the virus has also been spread in numerous other places, such as grocery stores and offices, that remain open under the Order. The Sixth Circuit rejected a similar argument:

> The Governor suggests that the explanation for these groups of people to be in the same area—intentional worship—creates greater risks of contagion than groups of people, say, in an office setting or an airport. But the reason a group of people go to one place has nothing to do with it. **Risks of contagion turn on social interaction in close quarters; the virus does not care why they are there**.

*Roberts*, 958 F.3d at 416.


*/s/ Barry K. Arrington*
_____
Barry K. Arrington
Arrington Law Firm
3801 East Florida Avenue
Suite 830
Denver, Colorado 80210

Voice: (303) 205-7870
Fax: (303) 463-0410
Email: barry@arringtonpc.com
Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

 I hereby certify that on May 28, 2020, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing via email to the following parties of record:

Natalie Hanlon Leh
Eric R. Olson
W. Eric Kuhn
Emily B. Buckley
Ryan K. Lorch
Office of the Colorado Attorney General
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, Colorado 80203

*/s/ Barry K. Arrington*
_____

Barry K. Arrington