IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 1:20-cv-01480-RM-MEH

HIGH PLAINS HARVEST CHURCH, and
MARK HOTALING,

     Plaintiffs,

v.

JARED POLIS, in his official capacity as Governor of the State of Colorado, and
JILL HUNSAKER RYAN, in her official capacity as Executive Director of the Colorado Department of Public Health and Environment,

     Defendants.

_____

**ORDER**
_____

This matter is before the Court on Plaintiffs' motion for a preliminary injunction (ECF Nos. 35, 43). For the reasons below, the motion is denied.

**I.     LEGAL STANDARD**

To obtain injunctive relief, the plaintiff must establish "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest." *Diné Citizens Against Ruining Our Environment v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quotation omitted). Because a preliminary injunction is an extraordinary remedy, the plaintiff's right to relief must be clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).

The fundamental purpose of preliminary injunctive relief is to preserve the relative positions of the parties until a trial on the merits can be held. *Id.* Further, this circuit has identified three types of injunctions that are specifically disfavored: "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *Id.* at 1258-59 (quotation omitted). To get a disfavored injunction, the moving party faces and even heavier burden of showing that the first and third factors above tilt in its favor. *Free the Nipple—Fort Collins v. City of Fort Collins*, 916 F.3d 792, 797 (10th Cir. 2019).

## II.     BACKGROUND

In their original complaint, Plaintiffs alleged government orders in place at that time to address the COVID-19 pandemic violated their First Amendment rights. But after the United States Supreme Court denied an application for preliminary injunctive relief in *South Bay United Pentecostal Church v. Newsom*, 590 U.S. ___ (2020) ("*South Bay*"), Plaintiffs withdrew their original motion for a temporary restraining order and preliminary injunction. In his concurrence in *South Bay*, Chief Justice Roberts noted that, given the severity of the health crisis, "[t]he precise question of when restrictions on particular social activities should be lifted during the pandemic is a dynamic and fact-intensive matter subject to reasonable disagreement." *Id.* at ___. Chief Justice Roberts went on to state that, under the circumstances, politically accountable state officials "should not be subject to second-guessing by an unelected federal judiciary," particularly where a party seeks emergency relief while local officials are actively shaping their response to changing facts on the ground. *Id.* at ___ (quotation omitted).

After *South Bay*, spontaneous and volatile mass protests following the death of George Floyd occurred in cities across America, including Denver. Plaintiffs then filed an amended

complaint, alleging Defendants "permitted and encouraged these protest gatherings while continuing to impose draconian restrictions on religious gatherings." (ECF No. 34 at ¶ 8.) Plaintiffs now seek to recommence in-person church services in numbers greater than fifty. (ECF No. 34 at ¶ 42.) The Court has denied their motion for a temporary restraining order (ECF No. 41), and the motion for a preliminary injunction is now fully briefed (ECF Nos. 48, 49, 52) and ripe for review.

### III. ANALYSIS

In light of *South Bay* and the Supreme Court's more recent ruling in *Calvary Chapel Dayton Valley v. Sisolak*, No. 19A1070, 2020 WL 4251360 (July 24, 2020) ("*Calvary Chapel*"), the Court finds Plaintiffs have not made a strong showing of a reasonable likelihood of success in this matter. For the present purpose of determining whether preliminary relief is appropriate, the Court finds this case is not materially different from these Supreme Court cases, both of which denied injunctive relief. Plaintiffs' attempt to distinguish *Calvary Chapel* on the ground that the lower courts did not confront the issue of whether public officials discriminated against those plaintiffs in favor of protesters is unavailing. If officials can impose more severe restrictions on religious services than they can on bars, casinos, and gyms, it is difficult to see how the recent mass protests, which appear to have less in common with religious services than the activities at issue in *Calvary Chapel*, present circumstances where it is probable that the government's conduct is unconstitutional. Further, in his dissent in *Calvary Chapel*, Justice Alito addressed the notion that public officials might engage in viewpoint discrimination by expressing support for protesters while limiting attendance at church services, but that is not what the Court held. *See* 2020 WL 4251360, at *4 (Alito, J., dissenting).

As mentioned above, Plaintiffs initially sought the right to conduct religious services involving up to fifty persons while following CDC guidelines. (ECF No. 1, Complaint at ¶¶ 26-29.) That is permissible under the latest Executive Order. (ECF No. 48-3, Eighth Am. Public Health Order at ¶ II.M.) Plaintiffs now seek to have no public health restrictions whatsoever applied to them—whether expressed in terms of numbers of attendees, masks, social distancing, or otherwise. Plaintiffs do not seek such relief based on differences between the restrictions placed on them and those placed on comparable indoor secular establishments. Instead, Plaintiffs essentially contend that because Defendants did not respond to the recent mass protests by wading into the crowd of demonstrators and arresting or citing people for public health violations, they may not now enforce the existing Executive Orders against Plaintiffs.

Despite the myriad of differences between the protests and Plaintiffs' desired services (including indoor vs. outdoor, emergency vs. less exigent circumstances being faced by law enforcement, and other distinctions), Plaintiffs would have the Court preclude the state from enforcing public health orders—even as the COVID-19 pandemic again demonstrates its persistence and resilience—merely because the state addressed an unprecedented and potentially explosive situation with a modicum of restraint. Contrary to what Plaintiffs contend, the record evidence does not establish that the state encouraged protests or created de facto exemptions. And the state did not lose its authority to manage a public health emergency because of its response to the protests. And so, based on Plaintiffs' arguments and the record evidence, the Court has little trouble finding, at the very least, that the burden of establishing a substantial likelihood of prevailing on the merits has not been met.

IV.     **CONCLUSION**

Accordingly, the Court DENIES Plaintiffs' request for a preliminary injunction (ECF Nos. 35, 43).

DATED this 10th day of August, 2020.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge

5